IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CDY

| | |
|---|---|
| HENRIETTA BROWN, and LYNETTA BROWN, <br><br> Plaintiffs, <br><br> v. <br><br> IAN TEPPER, WALL STREET MORTGAGE ACCEPTANCE CORP., BNC MORTGAGE, INC., CHASE HOME FINANCE LLC, and ABSOLUTE TITLE SERVICES, INC., <br><br> Defendants. | 08CV1734 <br> **JUDGE HOLDERMAN** <br> **MAG. JUDGE VALDEZ** <br><br> JURY DEMANDED |

RECEIVED
MAR 2 5 2008
3-25-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

### I. INTRODUCTION

1. Plaintiffs, Henrietta Brown and Lynetta Brown, by and through their attorneys, Michelle Wetzel and the Legal Assistance Foundation of Metropolitan Chicago, bring this action for rescission of a mortgage loan and for money damages under the Truth in Lending Act and for relief for breach of fiduciary duty under Illinois law.

### II. JURISDICTION

2. This Court has jurisdiction over Truth in Lending Act (TILA) claims under 15 U.S.C. §1640(e) and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## III. PARTIES AND VENUE

3. Plaintiff Henrietta Brown is a 57-year-old woman residing in her home at 1326 N. Monitor, Chicago, Illinois, which she has owned for over 10 years. Plaintiff Lynetta Brown is Henrietta Brown's granddaughter.

4. Defendant BNC Mortgage Inc. has a principal place of business in California and does business within the state of Illinois.

5. Defendant BNC Mortgage Inc. is the originating lender of the promissory note and mortgage at issue in this matter and is engaged in the business of regularly extending or offering to extend consumer credit for which a finance charge is imposed or which, by written agreement, is payable in more than four installments.

6. Defendant Chase Home Finance LLC has a principal place of business in California and does business within the state of Illinois.

7. Defendant Chase Home Finance LLC is believed to be the current assignee of the promissory note and mortgage at issue in this matter and is engaged in the business of regularly extending or offering to extend consumer credit for which a finance charge is imposed or which, by written agreement, is payable in more than four installments.

8. Defendant Wall Street Mortgage Acceptance Corp. is an Illinois corporation and does business in the state of Illinois.

9. Defendant Wall Street Mortgage Acceptance Corp. served as the mortgage broker and received compensation for the promissory note and mortgage at issue in this matter.

10. Defendant Ian Tepper is the President of Wall Street Mortgage Acceptance Corp. and acted as mortgage broker in this matter.

11. Defendant Absolute Title Services, Inc., is an Illinois corporation and has its principal office in Schaumburg, Illinois.

12. On information and belief, Defendant Absolute Title Services, Inc. is still in possession of approximately $62,000 of the proceeds of the mortgage at issue in an escrow account.

13. Venue lies in this District pursuant to the provisions of 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) in that Defendants have transacted business of a substantial and continuous character in this District, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Additionally, the ends of justice require that Defendants be brought before the Court pursuant to 18 U.S.C. § 1965(b).

## IV. STATEMENT OF FACTS

### Background Relating to Plaintiffs

14. Plaintiff Henrietta Brown is a 57-year-old woman who is disabled and cares for her disabled adult son.

15. Henrietta Brown's sole income is disability benefits that she receives for herself and her disabled son in the amount of approximately $1,783 per month.

16. Plaintiff Lynetta Brown is Henrietta Brown's granddaughter. The only reason she is on the subject mortgage is that she was trying to help her grandmother. Defendant mortgage broker Ian Tepper of Wall Street Mortgage Acceptance Corp. told Henrietta Brown that her disability income alone was not enough to obtain the new mortgage he was trying to arrange for

3

her. Therefore, he insisted on adding another family member's income on the mortgage application in order to get it approved.

17. Plaintiff Henrietta Brown purchased her house approximately ten years ago for $97,000.

18. Immediately prior to their transactions with Defendants in this case, Plaintiff's purchase mortgage balance was approximately $84,862.66.

19. As a result of the new mortgage at issue Henrietta Brown's monthly payments went from approximately $1,056 per month including taxes and insurance to $1,405 per month. That payment has recently increased again to approximately $1,490 per month since there was an increase in the amount she is required to escrow for taxes and insurance. Henrietta Brown now pays over 80 percent of the monthly disability income she and her son receive in mortgage payments.

### Plaintiffs' Meetings With Defendants

20. In or about fall 2006, Henrietta Brown needed to get her roof and back porch repaired. She spoke about it with Jose Ramos of Climate Guard Design and Installation, L.L.C. (Climate Guard).

21. After their initial conversation, Jose Ramos called Henrietta Brown repeatedly. Henrietta Brown finally made an appointment with Climate Guard on or about December 2006. When they met, Henrietta Brown told Jose Ramos that she needed her back porch and part of her roof redone. Mr. Ramos asked about updating her kitchen and bathrooms as well. Mr. Ramos told Henrietta Brown that the total for the work to the back porch, roof, kitchen and baths would be $47,000 and would only raise her current mortgage payments by about $200 per month.

4

22. Henrietta Brown and Jose Ramos then discussed how much it would cost to finish Henrietta Brown's basement. Jose Ramos said Climate Guard could do all of the above work plus finish the basement for $62,000.

23. Mr. Ramos told Henrietta Brown that he could help Henrietta Brown get financing for the work. Jose Ramos put Henrietta Brown in touch with Ian Tepper of Wall Street Mortgage Acceptance Corp.

24. Henrietta Brown then met with Ian Tepper of Wall Street Mortgage Acceptance Corp. Mr. Tepper came to Henrietta Brown's house twice. Neither Henrietta Brown nor Lynetta Brown ever went to Mr. Tepper's office.

25. The first time they met at Henrietta Brown's house Mr. Tepper told Henrietta Brown that her disability income alone was not enough to obtain the new mortgage. Mr. Tepper asked Henrietta Brown if she had any family members whose income he could list on the mortgage application. Mr. Tepper then included Henrietta Brown's granddaughter Lynetta Brown's income of approximately $30,000 per year in the mortgage application. Mr. Tepper had Henrietta Brown and Lynetta Brown sign mortgage application papers for the new mortgage for $163,000.

26. The new mortgage was subsequently approved by BNC Mortgage.

27. The second time Ian Tepper came to Henrietta Brown's house was to have Henrietta Brown and Lynetta Brown sign the final mortgage papers for the new mortgage – this was on or about January, 11 2007. No one else, including any notary public, was with Mr. Tepper when he came to the house.

28. The documents signed by Plaintiffs constituted a $163,000 mortgage loan with a variable interest rate starting at 7.8 % for thirty-six months (then varying every 6 months depending on market rates to as high as 14.8% but never lower than 7.8%), with closing costs in the amount of $10,938.34, and a payment of approximately $1,405 per month including principal, interest, tax and insurance escrow.

29. Henrietta Brown and Lynetta Brown signed the papers that Mr. Tepper brought with him. When they finished, Mr. Tepper left with all of the signed papers. Henrietta Brown and Lynetta Brown never received copies of any of the mortgage papers including the Truth in Lending Statement, the HUD-1 form, or the Right of Rescission Statement.

### Facts Regarding the Mortgage Proceeds and Construction Escrow

30. On or about January 17, 2007, the loan proceeds were disbursed as follows: $84,862.66 was paid to Henrietta Brown's previous mortgage lenders; Ian Tepper and Wall Street Mortgage Acceptance Corp. received $5,585; and on information and belief, approximately $62,000 was to be held in escrow by Absolute Title until the home repair and remodeling work was completed by Climate Guard. Henrietta Brown got a check for approximately $2,500 that she used to make the first two payments on the new mortgage.

31. As a result of the new mortgage Henrietta Brown's monthly payments went from approximately $1056 per month including taxes and insurance to $1405 per month. That payment has recently increased again to approximately $1490 per month since there was an increase in the amount she is required to escrow for taxes and insurance. Henrietta Brown cannot afford these monthly payments.

32. In or about late January, 2007, Climate Guard came to Henrietta Brown's house to start work on her basement. Before any work began, Henrietta Brown wanted to confirm, among other things, that Climate Guard was going to put a tile floor in the basement. Climate Guard said they had not agreed to tile the basement floor. Henrietta said if Climate Guard was not going to do what they said they would do she did not want them to do any of the work on her house and she sent them away. Henrietta Brown has had no contact whatsoever with Climate Guard since then.

## V. CLAIMS

### COUNT I: TRUTH IN LENDING ACT
### FAILURE TO HONOR RESCISSION NOTICE

33. Plaintiffs incorporate paragraphs 1-32 above by reference herein. This count is brought against BNC Mortgage Inc. and Chase Home Finance LLC only.

34. This consumer credit transaction was subject to Plaintiffs' right of rescission. 15 U.S.C. § 1635 and Regulation Z § 226.23.

35. Defendants failed to deliver all material disclosures required by the Truth in Lending Act and Regulation Z, including but not limited to a correctly completed Notice of Right to Cancel as required under 15 U.S.C. § 1635(a) and Regulation Z § 226.23(b).

36. Plaintiffs have a continuing right to rescind the transaction until the third business day after receiving all material disclosures, up to three years after consummation of the transaction, pursuant to 15 U.S.C. § 1635(a) and Regulation Z § 226.23(a)(3).

37. On March 19, 2007, Plaintiffs rescinded the transaction, through counsel, by sending notice of rescission to Defendants BNC Mortgage Inc. and Chase Home Financing LLC.

38. Plaintiffs' counsel received a letter dated March 26, 2007 from Defendant BNC Mortgage Inc. denying Plaintiffs' notice of rescission.

39. Plaintiffs' counsel also received a letter dated April 2, 2007 from Defendant Ian Tepper of Wall Street Mortgage Acceptance Corp. denying Plaintiffs' notice of rescission.

40. Plaintiffs' counsel also received a letter dated July 10, 2007 from Chase Home Finance denying Plaintiffs' notice of rescission.

41. Much more than 20 calendar days have passed since Defendants received Plaintiffs' notice of rescission.

42. Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created by the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

43. Defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

44. Defendant Chase Home Finance, as purchaser or assignee of the mortgage, is also liable pursuant to 15 U.S.C. § 1641.

45. As a result of these violations of the Truth in Lending Act and Regulation Z, Defendants are liable to Plaintiffs for:

a. Rescission of the transaction pursuant to 15 U.S.C. § 1635(b).

b. Termination of any security interest in Plaintiff Henrietta Brown's property created by the transaction pursuant to 15 U.S.C. § 1635.

c. Return of any money or property given by the Plaintiffs to anyone, including

Defendants, in connection with this transaction, under 15 U.S.C. § 1635(b).

d. Statutory damages of $2000 for Defendants' failure to respond properly to Plaintiffs' rescission notice pursuant to 15 U.S.C. § 1640(a)(2)(A).

e. Forfeiture or return of loan proceeds under 15 U.S.C. § 1635.

f. Actual damages in an amount to be determined pursuant to 15 U.S.C. § 1640.

g. Costs in accordance with 15 U.S.C. § 1640.

WHEREFORE, Plaintiffs requests the following relief:

A. Declaratory and/or injunctive relief rescinding the mortgage on Plaintiff's home upon such terms as the Court determines;

B. Actual damages in an amount to be determined by the Court;

C. Statutory damages in the amount of $2000; and

D. Such other relief as this Court deems appropriate.

### COUNT II: BREACH OF FIDUCIARY DUTY TO DISBURSE CASH OUT TO BORROWER

46. Plaintiffs incorporate paragraphs 1-45 above by reference herein. This count is brought against Absolute Title Services, Inc. only.

47. Plaintiff Henrietta Brown's original intent was to obtain needed repairs to her home. Henrietta Brown was told by Climate Guard that the repairs and renovation she wanted done would cost $62,000.

48. According to the HUD-1 document obtained by Plaintiffs' counsel, after Henrietta Brown's previous mortgages and loan settlement charges were paid from the loan proceeds, $64,899.19 was to be paid as cash to borrower Plaintiffs. On information and belief, Absolute

Title retained approximately $64,899.19, less $2,500 that Plaintiff Henrietta Brown received. The balance of the approximately $62,300 was to be held by Absolute Title in escrow until Climate Guard completed the repair and renovation work at Henrietta Brown's home. This established a fiduciary duty between the Plaintiffs and Defendant Absolute Title.

49. When BNC Mortgage transferred Plaintiffs' loan funds to Absolute Title, the transfer put Absolute Title in a unique fiduciary position in regards to the Plaintiffs. Absolute Title owed a certain fiduciary duty to the Plaintiffs as a result of Absolute Title's position as loan disbursement escrow agent.

50. Plaintiffs did not direct loan funds to be paid to anyone other than themselves.

51. Plaintiff Henrietta Brown called off the work that Climate Guard was going to do on her home before any work started.

52. Since Climate Guard did not do any work on Henrietta Brown's home, on information and belief, Absolute Title still has $62,300 of Plaintiffs' money in an escrow account that they have not disbursed to Plaintiffs. For more than a year, Absolute Title has had $62,300 of Plaintiffs' money on which they are not earning any interest – instead, Henrietta Brown is paying interest on it at a current rate of 7.8%. Absolute Title has done nothing to disburse these funds to the Plaintiffs or to anyone else on Plaintiff's behalf. This is a clear breach of Absolute Title's fiduciary duty to Plaintiffs.

53. If, in the alternative, Absolute Title has disbursed the $62,300 to Climate Control despite the fact that Climate Control performed no work on Henrietta Brown's home, Absolute Title is in breach of its fiduciary duty to Plaintiffs for wrongfully and negligently disbursing their

money.

54. Plaintiffs have suffered economic hardship and lost potential interest income as the direct result of Absolute Title's breach of its fiduciary duty to Plaintiffs.

WHEREFORE, Plaintiffs requests the following relief:

A. That this Court order Absolute Title to disburse all funds it is currently holding on behalf of Plaintiffs in accordance with this Court's ruling on the rescission of the subject mortgage such that Plaintiffs are returned to the *status quo* as contemplated under the TILA;

B. In the alternative, that Absolute Title be ordered to disburse all funds it is currently holding on behalf of Plaintiffs to the Plaintiffs;

C. That the Court order full disgorgement of all fees received by Absolute Title; and

D. That the Court award actual damages in an amount to be determined by the court; and

E. That the Court order such other relief as it deems appropriate.

## COUNT III: VIOLATION OF ILLINOIS CONSUMER FRAUD ACT AND BREACH OF FIDUCIARY DUTY BY MORTGAGE BROKER

55. Plaintiffs incorporate paragraphs 1-54 above by reference herein. This count is brought against Ian Tepper and Wall Street Mortgage Acceptance Corp. (Wall Street) only.

56. At all relevant times Ian Tepper, president of Wall Street Mortgage Acceptance Corp., was acting as a loan officer and agent, with actual and apparent authority to communicate and transact business with Plaintiffs on behalf of Wall Street, and to communicate with lenders on behalf of Wall Street and Henrietta Brown and Lynetta Brown.

57. Ian Tepper as Wall Street's president held himself out as having superior knowledge and skill as a mortgage broker to provide information regarding various available loan products, and as being trustworthy.

58. Henrietta Brown and Lynetta Brown reasonably relied on Ian Tepper and Wall Street to act on their behalf in connection with their loan application and to provide them with full and accurate information regarding available loan terms.

59. At all relevant times, Ian Tepper and Wall Street were acting as Plaintiffs' agent for the purpose of applying for and obtaining a mortgage loan on the best available terms.

60. At all relevant times there was in effect the Illinois Consumer Fraud Act, 815 ILCS 505/2 (ICFA), which states in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

61. Defendants engaged in deceptive acts and practices by the use of deception, fraud, false pretenses, and/or misrepresentations in the making, altering, issuance and/or delivery of the loan documents.

62. Defendants made numerous material false representations and deceptive omissions, as set forth above. Defendants made the following misrepresentation, among others: a) that these

Plaintiffs could afford this loan, and that Henrietta Brown's mortgage payments would increase by no more than $200 per month. Defendants omitted the material fact that Plaintiffs had the right to rescind the mortgage by not leaving executed copies of the mortgage documents with Plaintiffs. Defendants altered or forged the loan documents by having a notary public swear that she witnessed Plaintiffs' signatures on the documents when no notary was present at Henrietta Brown's home when Plaintiffs signed the documents.

63. The representations and omissions were made for the purpose of inducing Plaintiffs to enter into the transaction.

64. Defendants further violated the ICFA by fraudulently inducing Plaintiffs to enter into an unfair and improvident loan with actual monthly payments in excess of 80% of Henrietta Brown's total monthly income.

65. Defendants' unfair and deceptive practices caused actual damages to Plaintiffs.

66. The conduct alleged above occurred in the course of Defendants' trade or business as a mortgage broker.

67. In agreeing to act as Plaintiffs' exclusive broker for the purpose of advising and assisting them in obtaining a mortgage loan, Defendants undertook the duties of a fiduciary for Henrietta Brown and Lynetta Brown.

68. Defendants breached their fiduciary duties to Plaintiffs by making false representations and deceptive omissions and advising Henrietta Brown to accept an unconscionable, improvident, and costly loan.

69. Plaintiffs suffered actual damages as a result of Defendants' breach of fiduciary duties.

WHEREFORE, Plaintiff requests the following relief:

A. Actual, consequential, and punitive damages as determined by the Court;

B. Full disgorgement of all fees received by Ian Tepper and Wall Street Mortgage Acceptance Corp.; and

C. Such other relief as this Court deems appropriate.

Respectfully submitted by:

_____
Michelle Wetzel

_____
Jack Block
Attorneys for Plaintiffs
Henrietta Brown and Lynetta Brown

Michelle Wetzel
Jack Block
Legal Assistance Foundation of Metropolitan Chicago
111 W. Jackson Blvd., Suite 300
Chicago, IL 60604
312/ 347-8350